UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

MATTHEW BREDDER,

Plaintiff,

-against-

THE CITY OF NEW YORK; NYPD CAPTAIN JULIO DELGADO; NYPD OFFICER JUSTIN SCHIVEK; and NYPD MEMBERS JOHN AND JANE DOES 1-6,

Defendants.

-------------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO CHANGE VENUE**

**22-cv-4293 (VSB)**

## INTRODUCTION

Plaintiff Matthew Bredder, by his attorneys, respectfully submits this Memorandum of Law and the accompanying Declaration of Gideon Orion Oliver (the "Oliver Decl.") in opposition to Defendants' Motion to Transfer Venue (ECF Nos. 11-12). Defendants are simply incorrect that this case "should have been brought" in the Eastern District of New York, as they assert multiple times. *See, e.g.,* Memorandum of Law in Support of Defendants' Motion to Transfer Venue (ECF No. 12, "DMOL") Point I. As seen in Point I below, although the case *could have* been brought in the Eastern District, there is no reason it *should have* been, and there is no question Plaintiff properly brought the case in the Southern District. As seen in Point II below, Defendants have not shown by clear and convincing evidence that transfer is appropriate. The Court should therefore deny Defendants' bid to remove the case from the venue Plaintiff has chosen.

## ARGUMENT

### I. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) and (2).

Under 28 U.S.C. §1391(b)(1), "[a] civil action may be brought in… a judicial district in which any defendant resides, if all defendants are residents of the State." The City of New York is a defendant in this action, and "resides" in the Southern District of New York by operation of 28

U.S.C. §1391(c)(2).[1] Additionally, under 28 U.S.C. §1391(b)(2), "[a] civil action may be brought in… a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, a substantial part of the events or omissions giving rise to Plaintiff's municipal liability claims occurred in the Southern District, including at multiple protests in Manhattan and The Bronx. Venue is thus eminently appropriate in this district under both 28 U.S.C. §1391(b)(1) and (2).

Though the entire first point of Defendants' memo is devoted to their argument that "the instant action should have been brought in the Eastern District of New York," *see* DMOL pp. 3-4, Defendants do not cite *any* support for their bald assertions that the case *should have* been brought elsewhere. Defendants' only attempt at argument to support their assertion is a statement that "the individually named officers who were involved in the underlying arrest performed their duties on the date of the incident in Kings County." DMOL p. 4. They cite *Cain v. N.Y. State Board of Elections*, 630 F.Supp. 221, 225 (EDNY 1986) – in which the Court held that, in cases against governmental officials, "'residence,' for venue purposes, is where the officials involved perform their duties" - on this point. But *Cain* does not say an official "resides" in the place where they engaged in the past acts or omissions that form the basis of the lawsuit, but rather where they work while the lawsuit is pending. *Cain* therefore supports Plaintiff's, not Defendants', position, which is that the individual Defendants "reside" for venue purposes in *this* district – not the Eastern District – because they "perform their duties" in this district at the present.

The reality is that NYPD members assigned to the SRG were, at all relevant times, typically deployed to *citywide* mobilizations, including in response to demonstrations, in all five

---

[1] 28 U.S.C. §1391(c)(2) provides that, "[f]or all venue purposes…an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

boroughs, no matter which borough they showed up to work in. Oliver Decl. ¶¶ 21-22. As a result, the two individual Defendants were deployed to Brooklyn on the date of the incident. However, currently, the two individual NYPD members who are Defendants in this case both perform their duties in the Southern District, not the Eastern District, given that their commands are in Manhattan and The Bronx.[2] *See* 28 U.S.C. ¶ 112(b). If they "reside" anywhere, for venue purposes, it is therefore in the Southern District, not the Eastern District.

That said, because Defendants are moving to transfer this action pursuant to 28 U.S.C. § 1404(a), as Your Honor has ruled,

> [t]o determine whether transfer is warranted, a district court engages in a two-step inquiry. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006). "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate . . . several factors relating to the convenience of transfer and the interests of justice." *Id.* (internal quotation marks and citations omitted).

*Monfried v Sigma Fin. Corp.*, No. 15-CV-2806 (VSB), 2016 US Dist LEXIS 200279, at *3-4 (SDNY June 7, 2016).

As to the first step in the appropriate two-step inquiry, the action is plainly one that "might have been" brought in the Eastern District. Therefore, as was the case in *Monfried*, the Court's "transfer determination will turn on an analysis of the nine 'convenience' factors' and any other factors particular to this case." *Id.* at *5.

## II. The relevant factors weigh in favor of the Court's respecting Plaintiff's venue choice.

While a District Court may, of course, transfer venue in a civil action for the convenience of parties and witnesses, and in the interest of justice, to another district where it might have been

[2] Specifically, Defendant Delgado is assigned to SRG Unit 2, which is located in the Bronx. Complaint at ¶ 3; ECF No. 6 (proof of service as to Defendant Delgado thereat). Defendant Schivek is a member of SRG Unit 1, which is located in Manhattan. Complaint at ¶ 4; ECF No. 6 (proof of service as to Defendant Schivek thereat).

brought, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) (internal quotation marks omitted); *see also*, *D.H. Blair & CO.,* 462 F.3d 95, 107 (2d Cir. 2006) (plaintiff's choice of forum "is given great weight"). This Court has observed that "a plaintiff's choice of forum 'is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer'" and that "[t]o overcome the presumption in favor of a plaintiff's choice of forum, a defendant must 'make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there.'" *Monfried,* 2016 US Dist LEXIS 200279, at *17-18 (internal citations omitted); *see also*, *e.g., Arce v. City of New York, et al.*, 2008 U.S. Dist. LEXIS 54039, at *2 (S.D.N.Y. July 16, 2008) (Rakoff, J.); *Habrout v. City of New York*, 143 F. Supp. 2d 399, 401 (S.D.N.Y. 2001).

In evaluating whether Defendants have demonstrated that the transfer would be convenient and in the interests of justice, courts typically consider factors including, but not limited to:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Monfried,* 2016 US Dist LEXIS 200279, at *4.[3] As seen below, those factors all either weigh in favor of the Court's respecting Plaintiff's choice of venue, or are evenly balanced. And, "'[w]here the inconvenience to the parties and witnesses are evenly balanced, the plaintiff is entitled to his choice of forum.'" *Monfried,* 2016 US Dist LEXIS 200279, at *17-18 (internal citations omitted). Because Plaintiff's view is that the fifth through seventh factors are evenly balanced, Plaintiff only addresses the other enumerated factors below.

[3] The cases Defendants cite flip the order of the second and third factors.

Taking into account the relevant factors and circumstances, Defendants have not made the required showing to justify transfer from Plaintiff's chosen forum in this case.

**a. 1st and 2nd factors – the convenience of witnesses and parties.**

Plaintiff Bredder is a resident of Manhattan. Complaint at ¶ 1. Both named Defendants are assigned to commands in the SDNY: Defendant Delgado is assigned to The Bronx, Complaint at ¶ 3; ECF No. 6, and Defendant Schivek is assigned to Manhattan, Complaint at ¶ 4; ECF No. 6. The NY City Law Department, NYPD headquarters, my Manhattan office, and the Southern District courthouse are all within a few blocks of each other. *See* Oliver Decl. ¶¶ 4-6. In my experience litigating civil rights cases against the City since 2004, in most NYPD-related police misconduct cases prior to the pandemic, depositions of the parties, and third-party witnesses, took place almost exclusively at the offices of the New York City Law Department at 100 Church Street, New York, NY 10007, and, since the pandemic, most such depositions have occurred virtually, by Zoom or some other remote means. Oliver Decl. ¶¶ 7-9. That all of the witness and the parties reside in Manhattan, for venue purposes, and all of the relevant office spaces are also in Manhattan, belie Defendants' claim the Eastern District would be more convenient for the witnesses or the parties.

"In order to show that the first factor [- witness convenience -] favors transfer, the moving party must identify the witnesses located in the transferee district upon whom it intends to rely and describe the content of their potential testimony…. 'Vague generalizations and failure to clearly specify the key witnesses to be called'" are insufficient. *Monfried,* 2016 US Dist LEXIS 200279, at *5 (internal citations omitted). Importantly, the City has not identified any witnesses, or described the contents of their potential testimony, or offered any basis to believe that any witness is a resident of or is stationed in Brooklyn, in support of their arguments as to the first factor. Rather, vague and speculative as can be, Defendants say that "presumably, any witnesses, such as other police officers who may have witnessed the incident or civilians who may have been in the vicinity

of the area in Brooklyn where the incident occurred, are located in Kings County." DMOL p. 6. However, not only do Defendants fail to identify even one such witness, police or civilian, they also fail to provide any support for their presumption that any such witnesses "are located in" Kings County, or own up to the fact that the only three witnesses whom all parties know will be involved in discovery – Plaintiff and the two individual Defendants – all reside in the Southern District. Past that, the SRG Defendants were almost certainly deployed to the incident at issue here with other members of their assigned SRG units, and thus additional SRG witnesses would also likely be assigned to the same SRG commands as the individual Defendants, and perhaps others, in the Southern District. And finally as to the first factor, Defendants concede it would be as convenient, or more convenient, for third-party witnesses to appear in Manhattan, as it would be for them to appear in Kings County, related to this case. *See* DMOL p. 6.

As to the second factor, the convenience of the parties, Defendants also concede that it would be as convenient, or more convenient, for Plaintiff and Defendants, and counsel to appear in Manhattan. *See id.* Beyond that, Defendants' arguments as to why it would be more convenient for the parties to try the case in the Eastern District are largely based in mis-statements or omissions about relevant facts (such as that the individual Defendants work in the Southern District). Elsewhere, Defendants make conclusory statements that are not really arguments at all, such as that "it would be more appropriate for the parties to appear" in the Eastern District and that "common sense dictates" Plaintiff's claims should be litigated there. *See id.*

Both of the first factors weigh in favor of denying Defendants' motion to change venue.

**b. 3rd factor – The location of relevant documents and relative ease of access to sources of proof.**

As to the third factor, while Defendants claim, in conclusory fashion, that relevant documents related to Plaintiff's arrest and prosecution "would be located within Brooklyn",

Defendants provide no support for their assertions. Although this factor '"is clearly an important consideration' […] courts have recognized that '[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents,"' such that, '"unless the defendant makes a detailed showing as to the burden it would incur absent a transfer,' its 'assertion that documents are located in the transferee forum is entitled to little weight."' *Monfried,* 2016 US Dist LEXIS 200279, at *9-10 (internal citations omitted). Defendants have made no such showing. The reality is that most, of not all of the documents in question exist primarily, if not exclusively, electronically, and are therefore not "located within Brooklyn" in any meaningful sense, or are more likely in the possession of the individual Defendants in the Southern District, rather than anywhere in Kings County. While the Office of the Kings County District Attorney ("KCDA") will have some relevant documents, the KCDA declined to prosecute Plaintiff Bredder's case before his first appearance. Complaint at ¶ 92. As such, the KCDA is highly unlikely to have substantial records. And, at any rate, the parties would seek any records the KCDA does have by subpoena, and they would be produced electronically, so the fact that KCDA likely has some relevant documents is a neutral factor.

Additionally, this case raises municipal liability claims under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) related to the NYPD's unconstitutional policing of the summer 2020 Black Lives Matter protests in New York City, against the backdrop of the Department's long history of unconstitutional policing of protests. Those *Monell* claims in this case incorporate, and go beyond, the *Monell* claims that are being litigated in the cases arising from the NYPD's policing of the summer 2020 Black Lives Matter protests that have been consolidated for pre-trial purposes before Hon. Colleen McMahon and Hon. Gabriel W. Gorenstein under the *In re NY City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM)(GWG), docket (the "Consolidated Actions"). Plaintiff is among the named plaintiffs, and putative class members, in one of the cases among the

Consolidated Actions, *Sow, et al. v. City of New York, et al.,* 20 Civ. 8924 (CM)(GWG). *See* Oliver Decl. ¶¶ 11-14. In the Consolidated Actions, the Court has already decided a substantial partial motion to dismiss (*see, In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383 (SDNY 2021), and discovery – including into *Monell* claims that overlap with those at issue in this case - is ongoing. *Id.* ¶ 15.

Many, if not most, of the documents related to those overlapping *Monell* claims have been gathered by the NYPD and/or the Law Department and have either been produced or are in the process of being reviewed for production/produced to Plaintiffs' counsel in the Consolidated Actions on a rolling basis. To the extent such records have already been collected, if they exist in a physical collection at all, they are likely within the Legal Bureau located at 1 Police Plaza, and/or within the Law Department, both of which are located in Manhattan.

Because most, if not all, of the relevant documents are located in the Southern District, or exist in electronic format, this fourth factor weighs in Plaintiff's favor.

**c. 4th factor – The locus of operative facts.**

With respect to the locus of operative facts, while it is true that the Mr. Bredder's arrest and arrest processing occurred in Kings County, the individual Defendants turned out of locations within the Southern District, and many of the events supporting Plaintiffs' *Monell* claims relate to protests that occurred in Manhattan or The Bronx and acts, omissions, and policy decisions made by City officials in the Southern District. As only some of the events related to Mr. Bredder's claims took place in the Eastern District, and virtually all of the events related to Plaintiff's *Monell* claims occurred in the Southern District, the 4th factor favors Plaintiff.

**d. 8th Factor – Plaintiff's choice of forum.**

In a bald accusation, opposing counsel also suggests—with offering any factual basis—that Plaintiff's counsel filed this case in the Southern District in the hope of a higher hourly billing

rate under the Second Circuit's "forum" rule. That was not a factor in Plaintiff's, or counsels', decision to file the case in this District. *See* Oliver Decl. ¶ 10. Even had it been, that would not justify transferring venue. *See*, *Arce v. City of New York, et al.,* 2008 U.S. Dist. LEXIS 54039 at *3-4 (S.D.N.Y. July 16, 2008) (Rakoff, J.):

> Defendants argue that, nonetheless, the case should be transferred to the Eastern District of New York because, in their view, plaintiff's counsel is forum shopping, bringing this case in the Southern District of New York only because courts in this District allegedly award higher attorney's fees than do courts in the Eastern District of New York….. Since plaintiff has chosen to employ a Manhattan lawyer to bring this claim, it is not clear that this would be an unreasonable reason for bringing the case here or that it would warrant transfer "in the interests of justice." But in any event, plaintiff's counsel has flatly denied that this was his motivation for bringing the claim here … and defendants have provided no good reason to question his credibility. (Internal citations omitted).

Setting Defendants' red herring "forum shopping" accusation aside, Defendants cite a number of cases saying that a plaintiff's choice of forum should be entitled to less deference when the plaintiff "does not reside in the district where he brought the case." DMOL p. 7. However, Plaintiff *does* reside in the district where he brought the case. "To overcome the presumption in favor of a plaintiff's choice of forum, a defendant must 'make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there.'" *Monfried,* 2016 US Dist LEXIS 200279, at *17 (internal citations omitted).

As Defendants have not made any such showing, this factor, too, weighs in Plaintiff's favor.

**e. 9th Factor – Trial efficiency and the interests of justice.**

Defendants' only argument as to the 9th factor is an abstract and groundless one, based on their concern that, if Plaintiff can bring this case in the Southern District, although some of the relevant events occurred in Kings County, than Plaintiffs' counsel will forum shop to get higher fees.

It is clear that efficiency and the interests of justice weigh in favor of keeping the case in the Southern District. As mentioned above, Plaintiff is a named plaintiff in the *Sow* putative class action

among the Consolidated Actions, in which Defendant Delgado's deposition has already been noticed. Oliver Decl. ¶¶ 11-15, 20. In addition to the Consolidated Actions, there are dozens of other cases pending in this district arising from the summer 2020 Black Lives Matter protests, many of which raise the same, or very similar, *Monell* claims as this case does. Oliver Decl. ¶¶ 16, 18. In many such cases, the Court has ordered the parties to coordinate overlapping *Monell* discovery in those cases with the ongoing *Monell* discovery in the Consolidated Actions. Oliver Decl. ¶¶ 17-18. In addition to the fact that Defendant Delgado's deposition has already been noticed in the Consolidated Actions, he is a named defendant in the *Sukana* action, where the Court has ordered discovery in coordination with the *Monell* discovery in the Consolidated Actions. Oliver Decl. ¶¶ 18-20.

The parties in the Consolidated Actions and cases coordinating discovery with them have expended, and continued to expend, an enormous amount of resources and energy coordinating very complicated *Monell* discovery. Transferring this case away from that ongoing discovery, in connection with which one of the two individual Defendants in this case has already been noticed as a deponent, would undermine, rather than promote, efficiency and the interests of justice.

## **CONCLUSION**

Defendants have failed to meet their burden of proving the propriety of transfer by a clear and convincing showing. See, *Arce* 2008 U.S. Dist. LEXIS 54039, at *2, *Habrout,* 143 F. Supp. 2d 399, 401. None of the factors they cite actually suggest that transferring venues would promote convenience, efficiency, or the interests of justice - and certainly not to the extent that the Court should disturb Plaintiff's choice of forum. The Court should therefore deny Defendants' motion to transfer this case to the Eastern District.

Dated: New York, New York
September 15, 2022

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: ______________________
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
remy@femmelaw.com
jessica@femmelaw.com